**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AMBER RAE MCLAWHORN, individually
and on behalf of all those similarly situated,

      Plaintiff,

v.                                                    Case No.: 8:17-cv-156-T-33AEP

GEICO INDEMNITY COMPANY,

      Defendant.

_____/

**MOTION FOR REMAND**

Plaintiff, Amber Rae McLawhorn, individually and on behalf of all those similarly situated, pursuant to 28 U.S.C. § 1447(c), moves to remand this action back to the Thirteenth Judicial Circuit Court for Hillsborough County, Florida in opposition to the Notice of Removal (Doc. 1) filed by Defendant, GEICO Indemnity Company ("GEICO"), because Defendant failed to demonstrate that this Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

**PRELIMINARY STATEMENT**

This proposed class action case involves the intersection of Florida's Financial Responsibility Law with the Florida Insurance Code.  Plaintiff seeks a declaration from the Court determining that GEICO has disregarded and failed to comply with its statutory obligations that are explicitly stated in the Florida Insurance Code, specifically Section 627.7276 of the Florida Statutes, which provides that when an insurer issues an automobile insurance policy that does not contain coverage for bodily injury damage, it must notify the insured of that fact on the face of the insurance policy and advise that the policy's coverage does not comply with any of Florida's

Financial Responsibility Law. *See* Ch. 324, Fla. Stat.  Plaintiff seeks to represent a class of similarly situated insureds of GEICO who also purchased automobile insurance that did not include bodily injury coverage that similarly did not provide the statute's mandatory disclosure. Plaintiff only seeks declaratory relief and does not bring any claims for damages on her own behalf or on behalf of the proposed class.[1]

## BACKGROUND AND PROCEDURAL HISTORY

### 1.       Statutory Background

Under Florida's "Financial Responsibility Law," *see* Chapter 324 of the Florida Statutes, in order to register a passenger vehicle for use on Florida's public roads, the owner must demonstrate that he or she can pay at least $10,000 for any **property damage** resulting from the use of the vehicle.  *See* § 324.022(1), Fla. Stat.  In addition, Florida drivers must also be able to prove their "financial responsibility" to respond in damages for liability as a result of a motor vehicle collision in the following amounts: (1) $10,000 for **bodily injury or death** of any one person involved in the crash, (2) $20,000 for **bodily injury or death** of two or more persons involved in the crash, and (3) $10,000 for **property damage**.  *See* Fla. Stat. § 324.021(7).

Under the Florida Insurance Code, in order to operate a passenger vehicle on Florida's public roads, every motor vehicle owner must have an insurance policy on the vehicle that

---

[1] Accordingly, Plaintiff intends to seek "(b)(2)" class certification, that is, a certification order under either Florida Rule of Civil Procedure 1.220(b)(2) or Federal Rule of Civil Procedure 23(b)(2). In either case, the allegations are properly suited for class treatment because GEICO "has acted or refused to act on grounds that apply generally to the class, so that final . . . **declaratory relief** is appropriate respecting the class as a whole." (Emphasis supplied.) Plaintiff may also be entitled to class certification under Rule 1.220(d)(4) or Rule 23(d)(4), which provides "[w]hen appropriate, an action may be brought or maintained as a class action with respect to **particular issues**." (Emphasis supplied.)

includes at least $10,000 in property damage coverage and have personal injury protection coverage, or "PIP."[2]  *See* §§ 627.7275(1) & 627.733(1), (3), Fla. Stat.

The Florida Insurance Code at § 627.7276 of the Florida Statutes (the "Notice Statute") also provides as follows:

> (1)   An automobile policy that does **not** contain coverage for bodily injury **and** property damage must be clearly stamped or printed to the effect that such coverage is not included in the policy in the following manner:
>
> "THIS POLICY DOES NOT PROVIDE BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE OR ANY OTHER COVERAGE FOR WHICH A SPECIFIC PREMIUM CHARGE IS NOT MADE, AND DOES NOT COMPLY WITH ANY FINANCIAL RESPONSIBILITY LAW."
>
> (2)   This legend must appear on the policy declaration page and on the filing back of the policy and be printed in a contrasting color from that used on the policy and in type larger than the largest type used in the text thereof, as an overprint or by a rubber stamp impression.

Fla. Stat. § 627.7276 (Emphasis supplied).

In light of these provisions of Florida's Financial Responsibility Law and the Florida Insurance Code, the **only** circumstance in which the Notice Statute would have any effect is the circumstance presented in this case: an insurance policy includes **property damage coverage but not bodily injury coverage** because **every automobile insurance policy in Florida must at least provide coverage for property damage**. *See* Fla. Stat. § 627.7275(1), Fla. Stat. (providing that a motor vehicle insurance policy may not be issued unless it provides coverage for property damage liability).  Any other interpretation would mean that the Notice Statute is mere statutory surplusage.  Therefore, whenever an insurance policy excludes bodily injury coverage, the contents of the Notice Statute must appear on the face of the declarations page.

---

[2] The "bodily injury" financial responsibility required by § 324.021(7) is not the same as the "personal injury protection" insurance coverage required by § 627.7275(1).

2.      **Factual Background**

In 2012, Plaintiff purchased an automobile insurance policy from GEICO (the "Policy").

According to the Policy's Declarations Page, the Policy provided property damage and PIP

coverage, among other coverages, but no bodily injury coverage. *See* **Exhibit 1**.  Importantly, the

contents of the Notice Statute's disclosure do <u>not</u> appear on the Declarations Page or anywhere

else in the Policy.   Thereafter, on May 6, 2013, Plaintiff was involved in a motor vehicle

collision with another driver, Joseph M. Papania, in which Mr. Papania was purportedly injured.

Mr. Papania had an automobile insurance policy with Liberty Mutual Insurance Company

("Liberty Mutual") which, Plaintiff understands, paid benefits to Mr. Papania following the

collision.

By letter dated May 9, 2013, GEICO advised Plaintiff that she did not have bodily injury

coverage under the Policy and, therefore, GEICO would not indemnify her for any bodily injury

claims made against her regarding the collision with Mr. Papania. *See* **Exhibit 2**.  Consequently,

when Liberty Mutual and Mr. Papania made a bodily injury claim against Plaintiff, GEICO

denied the claim.

Thereafter, in October 2016, Liberty Mutual filed a lawsuit against Plaintiff to prosecute

its subrogation claim. In the lawsuit, Liberty Mutual seeks a judgment against Plaintiff for

damages, which includes the amount of its subrogation claim.  It is possible that Plaintiff could

have her driver's license and vehicle registration suspended based on her failure to comply with

Florida's Financial Responsibility Law. *See* Fla. Stat. § 324.0221(2), Fla. Stat.

If GEICO had complied with the Notice Statute, Plaintiff would have been notified that

the Policy did not contain bodily injury coverage and otherwise did not comply with Florida's

Financial Responsibility Law.  Plaintiff's Policy, however, and thousands of other policies issued

by GEICO that did not provide bodily injury coverage similarly did not comply with the Notice Statute.

### 3.    Procedural History

On December 16, 2016, Plaintiff filed her one-count Class Action Complaint and Demand for Jury Trial (Doc. 2; the "Complaint") in the Thirteenth Judicial Circuit Court in Hillsborough County, Florida seeking a declaration that GEICO violated the Notice Statute by not including the mandatory statutory disclosure on the face of the Declarations Page or elsewhere in her Policy.  Plaintiff also seeks to represent a class of similarly situated Florida insureds also affected by GEICO's violation of the terms of the Notice Statute.  Plaintiff proposes the following class definition: "all those similarly situated persons who have failed to receive the proper statutory notice from GEICO pursuant to Section 627.7276, Florida Statutes (the 'Class')."  Complaint at ¶ 13.  On behalf of the proposed Class, Plaintiff seeks a "judgment under Count I declaring the parties' respective rights and obligations under Florida law, and otherwise applicable law, including but not limited to: **declaring that GEICO has failed to comply with the notice requirements under Section 627.7276, Florida Statutes**."  Complaint at p. 9 (emphasis supplied).

On January 20, 2017, GEICO filed its Notice of Removal alleging that this Court has subject matter jurisdiction under CAFA because there are at least 100 members of the proposed class, there is diversity of citizenship, and the amount in controversy exceeds $5 million. *See* Notice of Removal at ¶ 11.  Specifically, GEICO alleges that because (1) Plaintiff seeks class-wide declarations of bodily injury coverage, (2) GEICO issued 394,926 new motor vehicle insurance policies in Florida during the class period that did not include bodily injury coverage, (3) 7,821 of GEICO's insureds made collision claims during the class period, and (4) Plaintiff

seeks her attorneys' fees, the "aggregate amount of potential coverage being sought by the Putative Class exceeds $5,000,000." *See* Notice of Removal at ¶¶ 26-28.

On January 24, 2017, the Court entered an Endorsed Order (Doc. 4) regarding the Notice of Removal pointing out that of the purported 394,926 policies, GEICO failed to explain how many of these policies did not comply with the Notice Statute, and directing GEICO "to provide more information to the Court about the number of policies containing the notice and its effect on the amount in controversy."  On January 31, 2017, GEICO filed its Statement in Response (Doc. 12) asserting that **none of the policies** involved in the 7,821 collision claims complied with the Notice Statute. *See* Statement in Response at ¶ 1.   GEICO also stated that the "individuals insured by the policies providing coverage for the 7,821 collision claims identified in the Notice of Removal and referenced above therefore fall within the proposed class definition set forth in the Complaint."  Statement in Response at ¶ 2.

## SUMMARY OF ARGUMENT

Remand is proper here because GEICO did not meet its burden of establishing that the Court has subject matter jurisdiction.  First, GEICO failed to demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds $5 million because the value of Plaintiff's claim for declaratory relief is immeasurable and speculative, and GEICO relies on an improper interpretation of the relief Plaintiff seeks.  To be clear, Plaintiff does not seek a declaration that every class member is entitled to a minimum of $10,000 for losses in connection with bodily injury claims.   Rather, Plaintiff simply seeks a declaration that GEICO violated the Florida Insurance Code by issuing automobile insurance policies without bodily injury coverage that did not provide the necessary disclosure required under the Notice Statute advising that the policies did not comply with Florida's Financial Responsibility Law.  Second, GEICO's calculation that

extrapolates the number of potential bodily injury claims from the alleged 7,821 collision claims is not based on any evidence, just an unsupportable assumption that would require the Court to speculate. Third, Plaintiff's claim for attorneys' fees is too speculative to be included in the amount in controversy.

## LEGAL STANDARD

When any "action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Because the "Federal courts are courts of limited jurisdiction," they "may not proceed without requisite jurisdiction" and, therefore, must "constantly examine the basis of jurisdiction." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013); *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981).

The removing party bears the burden of showing that removal was proper. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008); *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1242 (11th Cir. 2001) (defendant has "the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence"). Further, whether a claim exceeds the federal court's jurisdictional amount in controversy threshold should be determined using an objective standard. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994). Neither subjective intent nor personal belief is a proper measure. *Id.* Moreover, removability is determined according to the plaintiff's pleading at the time of the petition for removal. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996).

In *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010), the Eleventh Circuit clarified that when a plaintiff makes an unspecified demand for damages in a state court

complaint, the removing defendant must prove that the amount in controversy exceeds the jurisdictional requirement by a preponderance of the evidence. *Id*. at 1061 (*citing Tapscott*, 77 F.3d at 1357).

Significant to GEICO's removal here, a "conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001).

CAFA's "primary objective" is ensuring that federal courts consider "interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013). Generally, CAFA grants district courts subject matter jurisdiction over class actions removed from state court when (1) the amount in controversy exceeds $5 million, (2) there is minimal diversity, and (3) the action involves 100 or more members of the proposed plaintiff class. *See* 28 U.S.C. § 1332(d)(2), (5)-(6); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (*citing Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1202-03 (11th Cir. 2007)).

The Supreme Court has made it clear that if the plaintiff's motion for remand contests the defendant's allegations regarding the amount in controversy, the court must determine, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553-54 (2014); 28 U.S.C. § 1446(c)(2)(B).   Citing *Dart Cherokee*, the Eleventh Circuit stated that when the plaintiff contests the defendant's calculation of the amount in controversy, the court may not simply accept the defendant's amount, but "must go further." *Dudley*, 778 F.3d at 912-13. Therefore, when a case is removed under CAFA and the damages in the complaint are

unspecified, it remains the defendant's burden to establish the jurisdictional amount by a preponderance of the evidence. *Pretka*, 608 F.3d at 752 (citing *Williams*, 269 F.3d at 1319); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction."); *see also Lowery*, 483 F.3d at 1208-10.  In a CAFA case, if the jurisdictional amount is not apparent based on the allegations of the complaint, the court should look to the notice of removal for "'evidence relevant to the amount in controversy at the time the case was removed.'" *Pretka*, 608 F.3d at 754 (*quoting Williams*, 269 F.3d at 1319).  The court can rely on the removing defendant's evidence, in addition to reasonable inferences and deductions drawn from that evidence, to determine whether the defendant has carried its burden. *Pretka*, 608 F.3d at 753-54.  The court cannot, however, determine jurisdiction "by looking to the stars." *Lowery*, 483 F.3d at 1215.

## ARGUMENT

GEICO asserts in the Notice of Removal that (1) there are more than 100 putative class members, (2) there is diversity of citizenship, and (3) the amount in controversy exceeds $5 million. *See* Notice of Removal at ¶¶ 15-16, 19-20, 25-28.  Plaintiff does not deny that there are more than 100 members of the proposed class or diversity of citizenship.  GEICO's allegations, however, are insufficient to satisfy its burden of establishing that the Court has subject matter jurisdiction.  Accordingly, the Court should remand.

**1.    GEICO failed to demonstrate by a preponderance of the evidence that the amount in controversy exceeds $5 million because the value of the declaratory relief Plaintiff seeks is speculative and immeasurable.**

GEICO has not and cannot satisfy its burden of establishing that the amount in controversy is more than $5 million because Plaintiff is not seeking any monetary relief in this proposed class action made up of only GEICO's Florida insureds like Plaintiff, and the value of

the declaratory relief that is sought is speculative and immeasurable.   Further, GEICO mischaracterizes Plaintiff's declaratory relief claim in an apparent attempt to assert that the Court has subject matter jurisdiction.

"The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard v. Enterprise Rent a Car*, 279 F.2d 967, 973 (11th Cir. 2002); *see also Mann v. Unum Life Ins. Co. of Am.*, 505 Fed. Appx. 854, 856 (11th Cir. 2013) (applying *Leonard* in a CAFA case).   Under CAFA, the claims of individual class members are generally aggregated to determine the monetary value that would flow to the entire class if the relief were granted. *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014)(identifying large number of medical bills at issue because of insufficient payment; declaratory relief action would give "immediate right" to receive additional payment).

Importantly, the monetary value of the object of the litigation – any amount that would "flow to" the plaintiff – must be measured solely from the plaintiff's perspective. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 219 (11th Cir. 1997).   Further, if "the value of injunctive relief is 'too speculative and immeasurable,' it will not be included in the amount in controversy." *Mann*, 505 Fed. Appx. at 856 (*quoting Leonard*, 279 F.2d at 973); *see also Porter v. MetroPCS Communications Inc.*, 592 Fed. Appx. 780, 783 (11th Cir. 2014) ("The defendant can take into account damages and any equitable relief the plaintiff seeks, as long as the estimate is not overly speculative.").

GEICO alleges in the Notice of Removal that the "Complaint seeks declaratory relief as to available insurance coverage on behalf of the Putative Class." Notice of Removal at ¶ 25. GEICO further alleges that it adjusted 7,821 collision claims in which a loss payment was made

in the five-year period between December 16, 2011 and December 16, 2016. *See* Notice of Removal at ¶ 26.   GEICO then alleges that because the "minimum amount of bodily injury liability coverage that GEICO Indemnity issued" during that period was "$10,000 per person and $20,000 per occurrence," the "aggregate amount of potential coverage being sought by the Putative Class therefore exceeds $5,000,000." Notice of Removal at ¶ 27.

GEICO, however, has either misinterpreted or mischaracterized the declaratory relief Plaintiff seeks.  Under GEICO's interpretation, the claim seeks to have GEICO supply all of its insureds who were involved in the 7,821 collision claims in which a loss payment was made with a further loss payment of at least $10,000 for bodily injury claims.  This is a misinterpretation because the declaration that Plaintiff seeks is simply a determination that GEICO did not comply with the Notice Statute when it issued Plaintiff's Policy – and the policies of all GEICO insureds that are similarly situated to Plaintiff – because it did not provide Plaintiff or the members of the proposed class with the required statutory notice stating that the policies did not comply with Florida's Financial Responsibility Law.  Indeed, the class Plaintiff proposes is simply "all those similarly situated persons who have failed to receive the proper statutory notice from GEICO pursuant to" the Notice Statute. *See* Complaint at ¶ 13.

The resulting relief that would "flow to" Plaintiff and the members of the proposed class if this declaratory judgment were entered in Plaintiff's favor would not be that GEICO would be required to supply a minimum of $10,000 in bodily injury benefits to every insured who purchased a policy without bodily injury coverage.  Rather, it would simply require GEICO to evaluate any bodily injury claims made against its insureds during the class period and determine if any amounts should be paid and, if so, in what amounts.  But because those amounts are

speculative and immeasurable at this time, GEICO cannot show that the purported value of Plaintiff's declaratory relief claim satisfies the amount in controversy.

*Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255 (11th Cir. 2000), is illustrative here. In *Morrison*, a group of plaintiffs brought a class action case against a group of automobile insurance companies alleging that they violated their insurance policies by not covering "diminished value" claims, *i.e.*, losses in the amount of the difference between the value of a vehicle that has never been repaired and the value of the same exact vehicle that has been repaired due to a collision.[3]  Among other things, the plaintiffs brought a claim for injunctive relief to enjoin the insurance companies from (1) depriving their insureds of diminished value coverage, (2) failing to disclose to insureds their obligation to pay for diminished value, and (3) failing to pay for diminished value losses on damaged vehicles. *Id*. at 1260.

The trial court dismissed the plaintiffs' claims, and on appeal, the Eleventh Circuit inquired about whether it had subject matter jurisdiction and ultimately determined that it did not.  In analyzing the injunctive relief claim, the court concluded that its value was immeasurable and speculative and therefore could not be used to establish any amount in controversy.  "In this case, it is mere speculation as to whether any particular class member will benefit monetarily, and if so to what extent, from an injunction requiring the defendants to pay any future claims for diminished value." *Id*. at 1269.   The court went on to state that

> [T]he injunction has no reasonably certain monetary value to any individual class member because it is simply impossible to know which class members will be involved in automobile accidents and assert claims for diminished value. . . .  Equally uncertain is the amount of those potential diminished value claims. An accident

---

[3] "For whatever reason (probably skepticism about the efficacy of automobile repairs) people generally will pay more for a used vehicle that has never been wrecked than they will for what is otherwise the same vehicle that has been wrecked and fully repaired. The difference is what the plaintiffs refer to as the 'diminished value' of a repaired vehicle." *Id*. at 1259.

> may be so minor as to result in virtually no diminished value or so severe that the vehicle is totaled and the insured is paid the full pre-accident market value.
>
> We therefore conclude that, with respect to individual class members, **the value of injunctive relief here is "too speculative and immeasurable"** to be included in determining the amount in controversy.

*Id*. at 1269-70 (citing *Ericsson*, 120 F.3d at 221-22).

Notably, the court also determined that the defendant's costs in supplying the requested injunctive relief were irrelevant.

> Although the requested injunction would require the defendants to notify their policyholders of the obligation to pay for diminished value, the plaintiffs benefit from this notice **only to the extent that the defendants are required to pay for future diminished value claims**. Therefore, the real value of the injunction to the plaintiffs is the potential future payments of diminished value claims. Moreover, while the defendants would certainly incur costs in providing this notice, the value of an injunction for amount in controversy purposes must be measured by what the plaintiff stands to gain, and therefore, **the costs borne by the defendant in complying with the injunction are irrelevant**.

*Id*. at 1268 n.9 (emphasis supplied).

*Jackson v. Purdue Pharma Co.*, No. 6:02-cv-1428-Orl-19KRS, 2003 WL 21356783 (M.D. Fla. April 11, 2003), is similarly illustrative. In *Jackson*, the plaintiff filed a class action case against a pharmaceutical manufacturer bringing claims for, among other things, medical monitoring. In ruling on the plaintiff's motion for remand, the court concluded that the claim for medical monitoring was injunctive in nature and determined that its value was speculative and immeasurable because "no one knows how much benefit any given plaintiff might derive from a medical monitoring fund." *Id*. at *4. Further, citing *Morrison*, the court concluded that "for purposes of establishing diversity jurisdiction, the amount in controversy may not be determined by valuing the cost to the Defendants of providing the requested relief." *Id*.

The value of the declaratory relief here is similarly speculative and immeasurable, as in *Morrison* and *Jackson*.  First, the declaratory relief's value cannot be measured by calculating GEICO's cost in supplying it.  Second, if the Court grants the declaration Plaintiff seeks, then GEICO's insureds who purchased policies without bodily injury coverage, which did not comply with the Notice Statute, may be entitled to bodily injury coverage and in the appropriate amount based on the insured's particular circumstances.  Therefore, it would be "mere speculation" to determine whether any particular class member would benefit monetarily from the bodily injury coverage, and, if so, in what amount because that information is impossible to know. *See Morrison*, 228 F.3d at 1269.  Indeed, some bodily injuries may have been minor, while others may have been more serious.  Moreover, "the real value" of Plaintiff's claim for declaratory relief is the amount of "the potential future payments of" bodily injury claims. *See id.* at n.9.  In that regard, Plaintiff's claim for declaratory relief is no different than a request for an insurance company to provide diminished value coverage in the event an insured class member is involved in a collision, or a request to a pharmaceutical company to provide future medical monitoring benefits.  The value of these equitable relief claims are speculative and immeasurable, and GEICO cannot argue that the value of the declaratory relief would be its cost in supplying the requested relief because it is measured based on the value that "flows to" Plaintiff and the proposed class.  Accordingly, GEICO has failed to demonstrate that the value of Plaintiff's declaratory relief claim is more than $5 million. *See Lowery*, 483 F.3d at 1215 (the court cannot determine jurisdiction "by looking to the stars").

Further, GEICO takes one of Plaintiff's allegations out of context in an attempt to argue that the scope of the declaratory relief Plaintiff seeks is much broader than it really is.  Although Plaintiff also seeks a "determination by this Court as to the available coverage under the GEICO

Policy to determine whether Plaintiff is entitled to bodily injury coverage as required by Florida's Financial Responsibility Law due to GEICO's failure to comply with the mandatory requirements of the Notice Statute," *see* Complaint at ¶ 38, **Plaintiff does <u>not</u> – and could not – <u>seek</u> <u>that</u> <u>relief</u> <u>class-wide</u>**. She only seeks that relief on her own behalf. Plaintiff is entitled to this relief because she was involved in a collision and is a defendant in a lawsuit against an insurance company seeking a judgment against her in connection with a subrogation claim that resulted from that collision. But for GEICO's violation of the Notice Statute, Plaintiff takes the position that she would not have been involved in that situation, but would have been alerted to the fact that the Policy did not comply with Florida's Financial Responsibility Law and would have purchased coverage that did. While this is relief Plaintiff seeks on her own behalf, it is not a claim she is making class-wide. *See, e.g., Advantage Open MRI, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 8:08-cv-2308-T17EAJ, 2009 WL 2958659, *3 (M.D. Fla. Sept. 15, 2009) (granting remand after concluding that the defendant's interpretation of the plaintiff's claim for damages was not supported in light of the allegations of the complaint).

2.  **GEICO's allegations regarding the amount in controversy rely on the flawed and unsupportable assumption that all of the alleged 7,821 collision claims also involved claims for bodily injury.**

GEICO alleges in the Notice of Removal that it has "adjusted 7,821 collision claims where a loss payment was made" between December 16, 2011 and December 16, 2016. Notice of Removal at ¶ 26. In the next paragraph, GEICO alleges that the "minimum amount of bodily injury liability coverage that GEICO" issued during this five-year period was "$10,000 per person and $20,000 per occurrence" and, therefore, the "aggregate amount of potential coverage" Plaintiff and the proposed seeks is over $5 million. Notice of Removal at ¶ 27. GEICO's allegations regarding the amount in controversy are conclusory and a bit cryptic. Indeed, it is not entirely clear whether GEICO is alleging that the "aggregate amount of potential coverage"

exceeds $5 million by multiplying the 7,821 collision claims by $10,000 to arrive at a figure over the jurisdictional threshold.  GEICO, however, provided some clarity in response to the Court's Endorsed Order by stating that "[g]iven the number of collision claims where a loss payment was made as set forth above, bodily injury liability coverage may have been available (had it been provided) depending upon the applicable circumstances.  The amount of potential bodily injury liability coverage sought in the Complaint therefore exceeds $5,000,000." Statement in Response at ¶ 5.

As Plaintiff argued above, that calculation cannot support the Court's jurisdiction because it requires speculation and misinterprets the Complaint.  But GEICO's calculation of the amount in controversy is otherwise improper because "collision claims" are entirely different from "bodily injury" claims.  To be clear, the allegations in the Complaint are directed at bodily injury coverage, and all of the discussion of collision claims appears only in the Notice of Removal and the Statement in Response.  In sum, GEICO's allegations regarding the amount in controversy rely on an assumption that a collision claim in which some amount of loss was paid would necessarily lead to a bodily injury in the amount of at least $10,000.  There is no support for this assumption.

The Policy defines "Bodily Injury Liability" and "Collision" as follows:

**BODILY INJURY LIABILITY**

Pays for bodily injury, including death, resulting from an automobile accident in which you are legally liable.  Also provides you with a legal defense in the event you are sued for damages as a result of a covered accident and includes damage for care and loss of services.

[. . .]

**COLLISION**

Pays for loss or **damage to your vehicle** or other qualifying non-owned vehicle caused by collision with an object or by upset. Payments are made on an actual cash value basis for the amount of each loss above the deductible selected. . . .

*See* Ex. 1 at pp. 6, 7 (emphasis supplied).

In addition to these definitions from the Policy, the Florida Division of Consumer Services, which operates under Florida's Chief Financial Officer, publishes on its website a consumer resource called *Automobile Insurance, A Toolkit for Consumers*,[4] which similarly defines "Bodily Injury Liability" and "Collision":

**Bodily Injury Liability (BI)**

This coverage protects you for **injuries or death to someone else that you are legally liable** for after a motor vehicle accident. As the owner of a vehicle, anytime an accident occurs involving your insured vehicle (whether or not you are driving), the possibility exists that you may be held financially responsible for any damages. This coverage not only covers the actual loss incurred, it can also provide coverage for your defense if you are sued. . . .

[. . .]

**Collision**

Collision coverage pays for the repair or actual cash value of your insured vehicle if it **collides with another vehicle**, flips over or collides with another object (except animals). Common deductibles are $250, $500 and $1000 and insurance companies normally require the purchase of Comprehensive/Other than Collision coverage in order to purchase Collision coverage.

In general, only equipment that is permanently attached to your vehicle is considered for coverage in a Collision claim. Tools and permanently attached tool boxes used in trade or a wheelchair lift or other custom features added by you or a dealer should be discussed with your agent or insurance company.

*See id.* at pp. 4, 7 (emphasis supplied).

---

[4]   *See* www.myfloridacfo.com/Division/Consumers/understandingCoverage/Guides/documents/AutoToolkit.pdf/ (visited on February 13, 2017).

Based on the explicit terms of the Policy and how collision and bodily injury claims are defined and generally understood, GEICO's allegations regarding 7,821 collision claims in which losses were paid does not provide any information about bodily injury claims, requiring the Court to speculate about a connection between them, which it is not permitted to do.

Indeed, the number of collision claims that GEICO paid during the class period has nothing to do with the number of bodily injury claims that the members of the proposed class may have had.  Collision claims arise out of incidents that cause physical damage to the insured's vehicle and are paid regardless of fault.  Bodily injury claims, however, arise out of collisions in which the insured is at fault and causes an injury or death to another driver.  GEICO has offered no evidence connecting these two types of claims.  For example, a collision claim can arise out of single-vehicle collision.  By definition, a single-vehicle collision cannot involve a bodily injury claim because there are no other vehicles involved.  In addition, based on information published by the Florida Department of Safety and Motor Vehicles, not all collisions in which there is vehicle damage also involve bodily injuries.  According to the Department's *Traffic Crash Facts, Annual Report 2015*,[5] in Florida in 2015, there were 374,342 traffic collisions, but only 159,795 – less than 43% – involved injuries, and 2,939 – less than 1% – involved fatalities. *See id*. at p. 3.

In sum, GEICO's payment of losses on 7,821 collision claims during a five-year period says nothing about the number of bodily injury claims that may have occurred during that period. Therefore, GEICO's calculation regarding the value of the declaratory relief Plaintiff seeks based on its use of collision claims data is pure speculation and is unsupportable. *See Lowery*, 483 F.3d at 1215 (the court cannot determine jurisdiction "by looking to the stars").

---

[5] *See* https://flhsmv.gov/pdf/crashreports/crash_facts_2015.pdf (visited February 13, 2017).

**3.      GEICO cannot use Plaintiff's request for attorneys fees' in its calculation of the amount in controversy.**

GEICO also attempts to include the fact that Plaintiff has requested attorneys' fees in the Complaint to support its allegation that it has satisfied the amount in controversy.  No amount of attorneys' fees is alleged, however, and in any event, a request for attorneys' fees cannot be used to calculate the amount in controversy if the amounts of fees at issue are speculative, as they are here. *See, e.g., Hammer v. CVS Pharmacy Inc.*, No. 8:14-cv-3243-T-33EAJ, 2015 WL 438351, *4 (M.D. Fla. Feb. 3, 2015) (granting motion for remand; defendant attempted to demonstrate the amount in controversy by adding speculative amounts of damages and attorneys' fees; "Defendant has failed to identify, or provide documentation of, any additional damages beyond mere speculation.").

While Plaintiff may be entitled to attorneys' fees if she prevails, because that fact has not yet been established, it is speculative.  Further, because GEICO has not put forth any evidence of the amount of attorneys' fees, attempting to include them in the amount in controversy is improper because that would also be speculative. *See Biffar v. GCA Servs. Group, Inc.*, No. 8:15-cv-1154-T-33TGW, 2015 WL 4042103, *3 (M.D. Fla. July 1, 2015) (because the court could "only speculate as to whether attorneys' fees would be awarded, . . . attorneys' fees should not be considered in the jurisdictional requirement calculation"); *Smuland v. Unum Life Ins. Co. of Am.*, No. 6:10-cv-281-Orl-28GJK, 2010 WL 1839106, *1 (M.D. Fla. April 30, 2010) ("UNUM's reliance on its assumption as to the fees to be collected by Plaintiff's attorney is insufficient to meet UNUM's burden of proof. Accordingly, UNUM has failed to provide the Court with specific allegations as to the amount of attorneys' fees in question, and the request that this Court conduct the kind of 'impermissible speculation' that the Eleventh Circuit Court of Appeals has rejected in determining the amount in controversy will not be entertained.") (*citing Lowery*, 483

F.3d at 1220); *Abilities Rehabs. Ctr. Found., Inc. v. Mount Vernon Fire Ins. Co.*, No. 8:10-cv-1676-T-33TBM, 2010 WL 4723449, *3 (M.D. Fla. Nov. 15, 2010) (granting the motion for remand because the amount of attorneys' fees that the plaintiff could be awarded was "purely speculative"); *Frith v. Auto-Owners Ins. Co.*, No. 8:08-cv-311-T-24TGW, 2008 WL 1897586, *2 (M.D. Fla. April 28, 2008) ("Although Plaintiff may ultimately amend his complaint to plead and recover punitive damages, as well as recover attorneys' fees and damages for mental anguish, the Court is unable to consider these additional damages at this time because to do so would be purely speculative."); *Wisely v. Allstate Ins. Co.*, No. 8:05-cv-1659-T-24MAP, 2006 WL 2189125, *2 (M.D. Fla. April 1, 2006) (court would not consider the plaintiff's demand for attorneys' fees in calculating the amount in controversy because doing so would be "pure speculation"); *Baker v. Nextel S. Corp.*, No. 09-20658-CIV, 2009 WL 1703276, *3 (S.D. Fla. May 26, 2009) ("Defendants, who bear the burden of establishing the amount in controversy, have not offered any basis on which the Court could calculate the possible punitive damages or attorneys' fees in this action, let alone proven that either or both would push the amount in controversy over $5,000,000. Without more than a speculative basis for determining these potential amounts, the Court cannot conclude that Defendants have carried their burden of proving that attorneys' fees or punitive damages would contribute to the amount in controversy such that it would exceed $5,000,000.").  Therefore, the only value that the Court can assign to Plaintiff's claim for attorneys' fees at this time is zero. *See Marquez*, 2014 WL 2968452 at *7.

## CONCLUSION

Because GEICO's failure to support its allegations regarding the amount in controversy invites the Court to engage in impermissible speculation and "look[] to the stars," *see Lowery*, 483 F.3d at 1215, the case must necessarily be remanded.  That is, because GEICO's allegations regarding the amount in controversy and the amount of attorneys' fees Plaintiff seeks are not

supported by evidence, the Notice of Removal fails to meet GEICO's burden of demonstrating by a preponderance of the evidence that the CAFA amount in controversy threshold has been met and, therefore, fails to establish subject matter jurisdiction.  Accordingly, the Court should remand this case to the Thirteenth Judicial Circuit Court in Hillsborough County, Florida.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Rule 3.01(g) of the Local Rules for the Middle District of Florida, Plaintiff has conferred with GEICO to determine whether it opposes or does not oppose this motion. GEICO opposes this motion.

Respectfully submitted,

*/s/ J. Daniel Clark*
J. Daniel Clark, FBN 0106471
dclark@clarkmartino.com
Matthew A. Crist, FBN 0035539
mcrist@clarkmartino.com
**CLARK ♦ MARTINO, P.A.**
3407 W. Kennedy Blvd.
Tampa, Florida  33609
Telephone: (813) 879-0700
Facsimile:  (813) 879-5498

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** on February 21, 2017, I electronically filed the foregoing with the Clerk of Court by using this Court's CM/ECF system that will send a notice of electronic filing to all counsel of record.

*/s/ J. Daniel Clark*
J. Daniel Clark